KIRKENDALL, JONES & CO. V. SHOREY & CO.

[FILED FEBRUARY 4, 1890.]

</div>

1. **Fraudulent Conveyances.** H. A. S. applied to K., J. & Co., wholesale dealers at O., to purchase goods, on credit, for the firms of S. & Co. at Neligh, and S. & Co. at Norfolk, and for the purpose of obtaining credit represented "that said firms were composed of his boys ; that they were good boys; had some money ; that he was behind them and was worth $25,000." Goods to the amount of $859.15 were, upon these representations, sold on credit, and shipped, part to S. & Co. at Neligh and part to S. & Co. at Norfolk. About the time the goods shipped to Neligh were received there, a copartnership was formed at that place, in the name and style of Shorey & Co., the only members of which were Mary P. S. and Ella M. S., the wife and daughter of H. A. S., which firm received the said goods in store and proceeded to sell them at retail. The goods shipped to Norfolk were received in store and put on sale at retail by J. L. S. & Co. of that place, a firm of which J. L. S., a son of H. A. S., was the sole member. H. A. S. was, in fact, never a partner in either of said firms and denied his liability. K., J. & Co. sued out an attachment, which on motion of defendants was discharged. On error, *held*, that the transaction was, in law, an assignment and disposition of said goods by the debtor firms, with intent to defraud their creditors.'

ERROR to the district court for Antelope county. Tried below before POWERS, J.

*Holmes & Hayes,* for plaintiffs in error.

*Thos. O'Day, contra.*

COBB, CH. J.

Kirkendall, Jones & Co. held an account not yet due, against the firm of Shorey & Co., upon which they commenced proceedings by attachment in the county court of Antelope county; the ground for attachment set out in the petition being, " that they have sold, conveyed, and disposed of their property with the fraudulent intent to cheat and defraud their creditors, and that defendants were about to convey and dispose of their property with intent to cheat and defraud their creditors." An order in attachment was issued, and property of the defendants therein taken in attachment. The said defendants appeared and presented and filed a motion to discharge the said attachment for the following reasons :

" First—The facts stated in the affidavit are not sufficient to justify the issuing of the same.

" Second—Because the statement of facts in said affidavit is untrue."

The said motion was heard by the court upon affidavits in support and in resistance thereof. And thereupon the court overruled the said motion, to which order the defendants excepted, and preserved the said affidavits by a bill of exceptions. The hearing was had on the 20th and 21st days of February, 1888, and the bill of exceptions settled on the 8th day of March, following. On the 13th day of April, 1888, the defendants filed in the district court of Antelope county a petition in error in said cause, in which they set out and assigned the following errors :

" First—The court erred in overruling plaintiffs' [in error] motion to discharge the attachment.

" Second—The court erred in permitting, over plaintiffs' objection, A. V. Finch to answer the question No. 9 of his direct examination.

"Third—The court erred in permitting witness Finch, over plaintiffs' objection, to answer the 19th question on his direct examination.

"Fourth—The court erred in overruling plaintiffs' objection to the 20th direct question, and in permitting said witness to answer the same over plaintiffs' objection.

"Fifth—The court erred in overruling plaintiffs' objection to the 24th question put to said witness, and in permitting his answer thereto over objection of plaintiffs.

"Sixth—The court erred in overruling plaintiffs' objection to question of witness H. A. Shorey, and in permitting his answer over the plaintiffs' objection.

"Seventh—The court erred in overruling the objection to questions Nos. 5, 6, 7, and 8 of witness H. A. Shorey, and in permitting answers thereto over plaintiffs' objection. Also in overruling plaintiffs' objections to questions 41, 42, 43, 44, 45, 46, 48, 50, 51, and 52, to said witness, and in permitting his answer thereto over the plaintiffs' objection. Also in permitting, over plaintiffs' objections, Exhibits 1 and 2."

The cause was heard upon error in the district court, which reversed the said order of the county court, and dismissed the said attachment.

Afterwards on the 22d day of ———, 1888, Kirkendall, Jones & Co. presented their motion in said court for a rehearing in said cause, and as the ground thereof alleging that the cause was fully submitted to said court on the 9th day of May, 1888, on the petition in error filed on the 13th day of April, 1888, D. A. Holmes appearing as attorney for the defendants in error; that on the following day, and after the said Holmes had left the county of Antelope, and before said cause was decided, and without notice to the said Holmes, plaintiffs in error filed an amended transcript of the proceedings in the county court, and such transcript now appears of record to be the transcript upon which the final judgment of the court was

rendered. That the original transcript upon which the cause was submitted does not disclose that the case was passed to final judgment, and the cause was presented upon the theory that it had not proceeded to final judgment in the county court. That the amended transcript discloses the fact that the cause had been finally decided by the county court, and that prior to the filing of the petition in error, an appeal bond had been filed in the county court, and an appeal taken to the district court; that the records of the district court disclose that such appeal was perfected by filing in the district court a transcript of the proceedings and final judgment prior to the commencement of proceedings in error herein; and that such appeal was still pending and undetermined in the district court. That the question as to whether the proceeding in error could be prosecuted after an appeal had been taken, and while the same was pending, from the judgment in this cause rendered by said county court, was not presented by the pleadings nor discussed by counsel at the time the cause was submitted, nor was the same considered by the court, etc. The motion for a rehearing was denied, and the cause is brought to this court by petition in error.

The errors assigned are:

1. The district court erred in reversing the order of the county court.

2. In overruling plaintiffs' motion for a rehearing.

The defendants' motion to discharge the attachment was heard and tried by the county court upon affidavits and oral testimony taken before the court; also, upon a certificate of partnership of Ella M. Shorey and Mary P. Shorey, dated November 10, 1887, of record in the county clerk's office November 12 following, which was offered by defendants, and by which it appears that on September 1, 1887, a copartnership was formed, under the name of Shorey & Co., to continue indefinitely from that date; that the nature of their business was that of a retail store for the

sale of boots and shoes and hosiery; that the principal place of business was the village of Neligh; that the names and residence of the members of the firm were M. P. Shorey and E. M. Shorey, both at Neligh, and that they are the only members of the firm.

They presented the affidavit of A. V. Finch, that he had been in the employ of Shorey & Co., of Neligh, as salesman in charge of their store since they commenced business; that he has known all the sales made and business transacted from said store since it was started; that the only sales made were those in the usual course of retail trade, and the proceeds, as fast as collected, were deposited in bank for the payment of bills as they fell due.·

Also the affidavit of Ella May Shorey, that she is a member of the firm and one of the defendants; that they organized and commenced business as a firm on September 1, 1887, composed of Mary P. Shorey and Ella May Shorey; that it has never had any other members, and no person, company, or body has now, or at any time since the partnership has had, any authority to dispose of any part of the property or goods of the firm, except the clerks employed in the store at Neligh, nor have they now, or at any time have they had, any authority to sell, dispose of, remove, or convey any property of defendants, except that of the goods in the store at Neligh in the usual course of retail trade; that defendants have not at any time sold any part of the property, goods, and merchandise, or otherwise disposed of the whole or any part of their property with the fraudulent intent to cheat or defraud their creditors, or to hinder or delay them in the collection of their debts; that they are not now, nor have been at any time since the formation of their partnership, about to sell, convey, or otherwise dispose of any of their property with any intent to either fraudulently or otherwise defraud their creditors, or to hinder or delay them in the collection of their debts; that the defendants are not now, and have not been at any

time since said partnership, about to remove the whole or any part of their property, goods, or merchandise with the intent of cheating or defrauding their creditors, or of hindering or delaying them in the collection of their debts, or of removing the whole or any part of their property, so that it could have the effect to cheat or defraud their creditors, or of hindering or delaying them in the collection of their debts; that the only sales, conveyances, dispositions, or contemplated removals, made of any part of their goods or property have been with an absolutely honest intention in the usual course of trade at retail at their regular place of business at their store at Neligh; that the defendant has not at any time authorized any person, partnership, or company to sell, convey, or otherwise dispose of the whole or any part of her property or to remove any part of the same except in the usual course of their retail trade, and for a strictly honest purpose, and that they have at all times applied and been ready to apply the proceeds of such sale to the payment of their debts as they fell due.

Also the affidavit of J. L. Shorey, that he is a member of the firm of J. L. Shorey & Co., of Norfolk, the son of Mary P. Shorey, and the brother of Ella May Shorey, who constitute the firm of Shorey & Co., of Neligh; that neither said firm of Shorey & Co., nor any member of it, has, or has ever had, any interest in the firm of J. L. Shorey & Co., and have never been connected with it in any manner; that these two firms are and always have been absolutely distinct from each other, neither firm ever having had any interest in common or participated in the business of each other; that prior to September 1, 1887, there was a negotiation between the parties to said firms for a partnership embracing the business of both, which never reached an agreement, but prior to that date was wholly abandoned; that there is not and never has been at Norfolk any firm of Shorey & Co., the firm there having always been that of J. L. Shorey & Co., and that affiant

was and always had been the sole member of said firm of J. L. Shorey & Co.

Also the affidavit of Mary P. Shorey, stating substantially the same facts as that of Ella May Shorey.

The plaintiffs presented an itemized account, dated Omaha, September 8, 1887, of $132.70, for boots and shoes sold to the firm of Shorey & Co. at Norfolk, and of like sales to Shorey & Co. at Neligh, of $424.95; also one of September 17, 1887, to same firm of $63; and to same firm, of September 23, 1887, of $146.60; and to the same firm at Norfolk, October 5, 1887, of $29.90; and one net, of $59; and one of October 22, 1887, of $15. These bills are sworn to by Charles A. Coe, a member of the plaint-iffs' firm.

Also the affidavit of Freeman P. Kirkendall, that he is the senior member of the plaintiffs' firm; that on the sale of the first bill of goods to Shorey & Co. he had a conversation in his store at Omaha with H. A. Shorey, who purchased the goods; that at the time Chas. A. Coe, the credit man of the firm, was absent, and affiant required the information of Mr. Shorey as to the standing of his firm, who stated that "his boys were in business in Norfolk and in Neligh; that they were good boys, and had some money, and that he himself was behind them and was worth $25,-000;" that no mention was made of any person other than his boys and himself as having any interest in the business; that affiant's firm did not at that time, nor since, · sell any goods to Ella M. and Mary P. Shorey, who now claim to own the business at Neligh; nor have they at any time been requested to transfer their accounts to them; nor have the said Ella M. and Mary P. Shorey ever offered to assume the accounts, or intimated to affiant's firm in any manner that they had any interest in the business, but, on the contrary, the communications of plaintiffs' firm, both personally and by letter, have been with the said H. A. Shorey; that the letter submitted as Exhibit A

was received November 1, 1887, and was the first intimation from H. A. Shorey that he was not a member of either firm; that the goods purchased by him in person at affiant's store were shipped, a portion to Neligh and a portion to Norfolk at his request; that affiant also attaches letters dated November 3 and 10, received by due course of mail, as Exhibits B and C, written by H. A. Shorey concerning the business of said firm.

"EXHIBIT A.

"NELIGH, NEB., Oct. 31, 1887.

"MESSRS. KIRK., JONES & CO. : Yours of the 28th is before me. I think there must be a mistake. My sons, which compose the firm of J. L. Shorey & Co., of Norfolk, have on hand more than a $1,000 worth of rubbers. They can buy goods, all they want and what they need, without my endorsement. Then my son at Central City said you refused him goods because you sold to Pearsons. And we have and are buying our rubbers for the Neligh store at Morses. I am not a member of either house, only stand ready to advise, and, if need be, to endorse, as it is my purpose for the boys to make a success. As you do not need a financial statement from me for the goods already delivered—which, doubtless, will be paid for in due time, and as I will tell the boys not to ask for further credit, I will not take the trouble to send the statement.

"Resp'y,        H. A. SHOREY.

"EXHIBIT B.

"NELIGH, NEB., Nov. 3, 1887.

"MESSRS. K., JONES & CO.: We were no little surprised at the announcement of drawing upon us on a 30 day bill; and I am sorry that the odd lot of boys' boots is causing so much annoyance. The facts are these: I ordered a lot of boys' calf at $1.75 a pair because they closed out a mixed lot of odd sizes. Then you called my attention to some wo's boots at what you termed a low

figure, because you wanted to close them out, as you were to change lasts, or something of that kind.   I said 2 dozen of ·different widths for Shorey & Co., ½ dozen for J. L. Shorey & Co. as samples, and 16 pairs of the boys' boots. Not a word was said of *nett*, or 30 days; if there had been I should have dropped them.   As I took them in part to help you get rid of them—and we have not sold a pair of the wo's boots.   In some ten days after date of bill we received the wos boots and the 16 pairs of boys' boots which was to have been sent to J. L. S. & Co.   They wrote us to know where theirs were.   We replied, as some had come to us, probably you were not to send the balance to them. Upon that they ordered elsewhere boys' boots.   Then in about three weeks from date of order, J. L. S. & Co. received the goods from you, but the wo's boots charged at $2.75 and the bill nett.   I told them you must have made a mistake and they had better try to use them, although they had plenty.   But it seems they think different.   There was no cause for delay in shipment, as the boys' boots were on the floor and the women's filled up below.   Now if you draw upon Shorey & Co., I suppose they will pay it.

" As to J. L. S. & Co., I have nothing to say ; they can do their own business.   You can depend upon the bills being settled as soon, *at least*, as they are due.

"Resp'y,          H. A. Shorey.

" Exhibit C.

" Neligh, Neb., Nov. 10, 1887.

"Messrs. K., Jones & Co.: We return your draft unpaid, as we do not recognize the claim of a 30 day bill. Mr. Shorey, who ordered the goods for us, says not a word about their being *nett*, and as it was fully understood that our time was four months.   We did not observe any terms on the bills, so, under these circumstances, we decline the draft.   If, however, you very much want the money and will make the usual discount we will pay the bill.

" Resp'y,          Shorey & Co."

The plaintiff also presented the affidavit of Chas. A. Coe, that he was a member of plaintiffs' firm, and is acquainted with the facts of the purchase of the goods by the firm of defendants; that all of the goods so purchased, except some few of small value, were purchased in plaintiffs' store, in Omaha, by Rev. H. A. Shorey, and by him ordered to be forwarded to Neligh and Norfolk, a portion to each; that on September 17, following, affiant had a conversation with H. A. Shorey, in plaintiffs' store in Omaha, in regard to defendants' account with the plaintiffs. At that time he stated to affiant that "the stores owned by Shorey & Co. at Neligh and Norfolk, for both of which he had purchased goods, were conducted by his sons; that he, himself, was interested in the business, and was worth $25,000. On the strength of which affiant sold him, at that date, and forwarded according to his orders, to Norfolk and Neligh, a portion of the goods which constitute the basis of this action; that said H. A. Shorey is the only person who has at any time bought goods at our house for the firm of Shorey & Co., either at Norfolk or Neligh. Affiant states that he has special charge of the credits in his firm, and has never at any time sold any goods, nor has said firm, to that composed of Ella May Shorey and Mary P. Shorey, and has never been advised, until the reading of the affidavits of Ella M. and Mary P. Shorey, in this case, that they claimed to be persons composing the firm of Shorey & Co. at Neligh, and that they are not now, and never have been, indebted to affiant's firm in any sum whatever; nor has his firm been advised of any transfer by H. A. Shorey and his sons, composing the firm of Shorey & Co., defendants, to the said Ella M. and Mary P. Shorey, of their stock of goods, nor has his firm consented to a transfer of their accounts against Shorey & Co. to said persons, or accepted them as debtors in place of the firm of Shorey & Co. Affiant further says that he had another conversation with H. A. Shorey in the plaintiffs'

store at Omaha, subsequent to September 17, 1887, concerning the business of the firm of Shorey & Co., to the same effect as that stated, and that the goods sold to H. A. Shorey at that time were sold to him in person, upon the faith of his former statement to affiant concerning the business of the firm of Shorey & Co.

Also the affidavit of F. W. McCann, that he is a member of the firm of W. B. Jones & Co., manufacturers of fine shoes at No. 112 Washington street, Chicago; that he is acquainted with the Rev. H. A. Shorey, president of Gates college, in Nebraska; that on November 12, 1887, the said Shorey called at their place of business, in Chicago, and made representations, for the purchase of goods upon credit, and his own responsibility therefor, substantially the same as those alleged to have been made in the affidavits of Kirkendall and Coe, of the plaintiffs' firm.

A. V. Finch, a witness examined by plaintiffs, testified that he resided at Neligh; was a shoemaker by trade, and acquainted with the firm of Shorey & Co. for the past few months; had been, and was still, in their employ as clerk and cobbler, in their store, in Neligh, since September last.

Q. With whom had you a contract for your services?

A. Young Mr. Shorey came into my shop and talked to me about it, and we went to Mr. Shorey's house and talked the matter over, as to wages, with young Mr. Shorey and his father. I went into their employ about a week afterward. Witness assisted young Miss Shorey and young Mr. Shorey, H. F. Shorey, and Ella Shorey, in the store. H. F. Shorey remained until November 1; after that, assisted Miss Ella Shorey. The old gentlemen was not about the store a great deal.

Q. From whom did you receive instructions as to your work, or the management of the business? (Defendants' objections overruled and exception taken.)

A. Miss Shorey directed me as much or more than any

one else. When the old gentleman was in the store, he was generally busy writing letters—was busy with his business in the college, writing letters at his desk, and paying no attention to the store. Received some instructions from him in regard to trusting out goods.

Q. About the time this suit was commenced who were you at work for?

A. Shorey & Co.

Q. Who composed the firm at that time?

A. I don't know.

Q. You never heard the firm was composed of Mary P. and Ella M. Shorey until after this suit was commenced, did you?

A. I did not.

H. A. Shorey, sworn as a witness for the plaintiffs (over the objections of defendants, and exceptions taken), and testified that Mary P. and Ella M. Shorey composed the firm of Shorey & Co. at Neligh, and that he was not acquainted with the firm of Shorey & Co. doing business at Norfolk.

Q. Do you know J. L. Shorey at Norfolk and the firm of which he is a member?

A. Yes, sir.

Q. Who composes the firm?

A. J. L. Shorey.

Q. Who is the company? (Objected to by defendants.)

A. I don't know.

Q. Were you a member of the firm of Shorey & Co. during the month of September at Norfolk, or Neligh?

A. No, sir.

Q. You bought goods for them both, didn't you? (Objected to by defendants.

A. I did not.

Q. You selected goods at plaintiffs store in Omaha, and ordered them shipped to both stores, did you not?

A. No, sir, with one exception: I was at plaintiffs' store

and Shorey & Co. wanted a few boys' calf boots, and I inquired of some party in the store, when my attention was called to a small job-lot of goods that was cheap, and I told them that I merely wanted to select a few goods for Shorey & Co., of Neligh, as the goods were cheap; I didn't know whether J. L. Shorey & Co. at Norfolk could use any goods or not, but that I would take the responsibility of ordering them shipped to them, in order to close out the lot, if they found upon inquiry that the firm of Shorey & Co. was good.    I had nothing to do with the firm of J. L. Shorey & Co.

Q.  You bought goods for the firm at Neligh?

A.  I did.

Q.  You ordered all that they got from plaintiffs in this case?

A.  No, sir.

Q.  Do you know of their purchasing any themselves?

A.  I cannot swear that they did.

Q.  You visited Kirkendall, Jones & Co., in their store, on several occasions?

A.  Yes, sir.

Q.  You ordered goods shipped to Norfolk?

A.  No, sir, except the time stated.

Q.  I will ask you to examine Exhibits A, B, and C, to the affidavit of Messrs. Kirkendall and Coe and state whether or not they are in your handwriting.

A.  Yes, sir, they are.

Q.  Who furnished the money that was put in this business here of Shorey & Co.?

A.  Shorey & Co. did.

Q.  What individual furnished the money?

A.  The individuals that formed the firm of Shorey & Co.

Q.  Didn't you put any money into that business?

A.  No, sir.

Q.  Do you know of any money being put into that firm by any one; and if so, how much and by whom?

A. Yes, sir; first, all that is necessary for business; second, by Shorey & Co.

Q. I want an answer to my question; it is how much money, and by whom, do you know of having been put in that business of Shorey & Co.

A. I have answered, I think.

Q. You say you never put any money in the business?

A. I refer to the record.

Q. Do you now say you never put any money into that business?

A. I do as a business.

Q. Has any of your money been used in that business?

A. I decline to answer, or tell what I do' with my money.

(To all the above questions the objections of the defendants were overruled and exceptions taken.) Counsel for plaintiffs insisted on the witness being required to answer the last question.

BY THE COURT: The witness need not answer unless he desires.

Q. Did you write the paper Exhibit No. 2?

A. It is my handwriting.

The main question presented by the record, and deemed important to consider is that upon the affidavit for attachment in the county court, and raised by defendants in their motion to discharge the attachment in said court.

It is fairly established, by the evidence, that the goods for which plaintiffs' attachment was brought were sold to the firm or firms of Shorey & Co., of which H. A. Shorey who actually transacted the business of such purchase, represented his sons to be the active members, and himself a silent partner, or as "standing behind them" and worth $25,000. That H. A. Shorey was a partner, either active or silent, is manifest by his letters to the plaintiffs, subsequent to his purchases, and set forth in Exhibits A, B, and C. It also sufficiently appears that before the bills for the

goods had become due, and before the attachment proceedings, the goods in the store at Neligh had passed from the control of either H. A. Shorey or his son, or any firm of which either would acknowledge himself to be a member. The means by which this transfer of possession, and the apparent ownership of the goods was effected, while possibly not a sale, in the common acceptation was a sale within the meaning of the words, " sold, conveyed, and disposed of their property."

The credit was given to H. A. Shorey on his representations "that the firm was composed of his boys; that they were good boys; had some money; that he himself was behind them and was worth $25,000."

For the purposes of this case these representations must be taken as true, when made, and any change of the membership of such firm, before the satisfaction of the debts contracted on account of them, by means of which the whole of the goods passed to the possession of the firm of which the sons of H. A. Shorey were not members, and behind which he no longer stood as surety, must not only be held to be a sale of the goods, but, upon the evidence in the case, must be held to have been made " with the fraudulent intent to defraud, hinder, and delay the creditors of the firm purchasing the goods," and to that conclusion we all come after a thorough examination of the evidence presented.

The questions of practice arising in the record are somewhat complicated and doubtful, but their decision does not affect the main question in this case, and are not deemed important to the present consideration.

The judgment of the district court, adverse to that of the county court, is reversed, and the order, judgment, and ruling of the county court are restored and affirmed, and the attachment originally granted in the cause is restored, and all things reversed, dismissed, vacated, or discharged by the judgment of the district court are restored and affirmed

and the cause remanded to the district court for further proceedings according to law.

REVERSED AND REMANDED.

THE other judges concur.